## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

Jeremy Anderson (K-92896),    )
                                 )
           Plaintiff,    )
                                 )      Case No. 19 C 6535
       v.                 )
                                 )      Judge John Robert Blakey
Karen Rabideau,    )
                                 )
          Defendant.    )

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jeremy Anderson, now a prisoner at Dixon Correctional Center, brought this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that Karen Rabideau, then placement officer at Stateville Correctional Center, failed to protect him from a January 15, 2019 attack by his cellmate. Defendant moves for summary judgment, arguing that Plaintiff: (1) failed to exhaust his administrative remedies; and (2) cannot establish that she was deliberately indifferent to a substantial risk of serious harm. The Court set a briefing schedule on Defendant's motion but received neither a response to the motion nor a reply in support of it. Nonetheless, and for the reasons that follow, the Court denies Defendant's motion. In light of the likely complexity of the case going forward, the Court will recruit counsel for Plaintiff in a separate order.

## I.     BACKGROUND

### A.     Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

2

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" [51], as required by Local Rule 56.2. Although Plaintiff attempted to submit his own list of material facts (really, a list of questions he believed relevant to the case, *see* [44]), he has not properly responded to the motion despite being given two opportunities to do so. *See* [53], [54]. The Court therefore accepts as true Defendant's Statement of Facts to the extent it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Nonetheless, although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the record evidence, including Plaintiff's deposition testimony, to determine whether there is a disputed issue of material fact for trial. *See Bentz v. Hardy*, 638 F. App'x. 535, 536 (7th Cir. 2016) (unpublished) (finding plaintiff's failure to properly respond to statement of uncontested facts was not fatal because defendants heavily relied on plaintiff's deposition as their evidentiary source). The Court also is mindful that failure to comply with Local Rule 56.1, or indeed to respond at all to a motion for summary judgment, does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law). The Court will apply these standards in evaluating the evidence.

### B.     Relevant Facts[1]

Plaintiff Jeremy Anderson is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and was housed at Stateville Correctional Center during the relevant time period.  [49] at ¶ 1.  Defendant Karen Rabideau served as the placement officer at the prison, a position she held at various times, including from January 2013 through August 2019.  *Id.* at ¶ 2; [49-2] at ¶ 1.

In late 2018, Plaintiff was housed with an inmate named Timothy Daniels in Cell 730 in Delta House.[2]  [49] at ¶ 5; [49-5] at 3.  Plaintiff contends that he began having problems with Daniels in November 2018, when his cellmate started "acting funny, like saying little words and stuff and he started threatening."  [49-1] at 19:23–20:8. Plaintiff did not pay attention to him at first, but as time went on, he started trying to get out of the cell.  *Id.* at 20:11–17.  Plaintiff felt his life was in danger by late December.  *Id.* at 20:20–24.

On Jan. 4, 2019, Plaintiff's mental health representative, Alice Fitzgerald, sent an email to Defendant on Plaintiff's behalf.  *See* [49] at ¶ 6; [49-3] at 2.  The email stated that Fitzgerald wrote on behalf of Plaintiff, who hoped to become cellmates with an inmate named Christopher Jones.  *Id.*  Fitzgerald asked Defendant to consider a cell change, writing:  "It seems that Mr. Daniels is attempting to provoke Mr. Anderson into fighting with him and he is feeling

---

[1] Subject-matter jurisdiction exists here under 28 U.S.C. § 1331 and § 1343(a)(3) and venue is proper here because the events occurred at Stateville Correctional Center, which lies within this district. *See* [49] at ¶¶ 3, 4.

[2] Defendant states that Plaintiff was placed into the cell with Daniels in early December of 2018, but Plaintiff refers to having problems with Daniels beginning in late November 2018.  *See* [49-1] at 18:16–19:1.

4

stressed out. Mr. Anderson is concerned if there isn't a change soon he may end up in segregation." *Id.* Defendant recalls receiving this email. *See* [49] at ¶ 28. Although Defendant made it a practice to contact Internal Affairs whenever she was made aware of any threat to a prisoner's life, she does not recall whether she involved Internal Affairs in this case. In any event, she stated that she did not read Fitzgerald's email to advise her of any serious threat to Plaintiff's life. *Id.* at ¶¶ 27–28.

Plaintiff also contends that he wrote letters, dated January 6, 2019, and January 8, 2019, requesting that Defendant move him to a different cell. *Id.* at ¶ 7; [49-1] at 13:8–14; 15:5–18. Plaintiff attached copies of these letters to his complaint. *See* [9] at 10–11. Plaintiff testified that he put the letters in envelopes on which he wrote his name and identification number and Defendant's name and title, and then put them in the institutional mail. [49-1] at 23:15–24:14. Plaintiff put the letters between the bars of his cell, and the gallery officer gathered the mail around 10 a.m. each day. *Id.* at 24:18–25:18. Because he is housed in a maximum-security facility, Plaintiff could not physically go to Defendant's office unless he needed something signed by her. *Id.* at 14:15–24.

In the alleged January 6, 2019 letter, Plaintiff asked Defendant to move him because Daniels had threatened to harm him. Plaintiff stated that Daniels had threatened to "brake [sic] my face in [sic] neck." [9] at 10. In the alleged January 8, 2019, letter, Plaintiff stated that his cellmate had threatened to kill him because he thought Plaintiff was using the toilet for too long. *Id.* at 11. Plaintiff asked that

one of them be moved. *Id.* Defendant has no recollection of receiving these letters. [49] at ¶ 7.

If she had received the letters, Defendant stated she would have immediately contacted Internal Affairs to investigate and would have forwarded the letters to Internal Affairs. *Id.* at ¶ 25. Defendant states that the procedure for moving a prisoner who is being threatened would be to first contact the cell house staff and determine if they are aware of the situation. *Id.* at ¶ 26. She would then contact Internal Affairs, which would investigate. *Id.* The prisoner would be placed on an investigative status, and after the investigation, Internal Affairs would notify Defendant whether the threat remained serious enough to move the prisoner. *Id.*

Defendant stated that she contacted Internal Affairs in every situation in which she was made aware of a threat to a prisoner's life. *Id.* at ¶ 27. She states that, due to security concerns, individuals in custody do not have the authority to dictate where they are housed or with whom. *Id.* at ¶ 29. For example, honoring requests from prisoners who want to be placed with other members of the same gang would pose safety concerns. *Id.* Defendant states that IDOC considers multiple factors, including safety and security, in placing inmates. *Id.* at ¶ 24.

On January 15, 2019, while Plaintiff was in his cell talking to an inmate worker who had walked up to the bars, Plaintiff's cellmate told him to shut up and struck him in the jaw. *See* [49-1] at 17:11–18. Plaintiff also contends that his cellmate bit his finger and Plaintiff had to get a tetanus shot. *Id.* at 26:7–12. IDOC moved Plaintiff to another cell after this incident. [49] at ¶ 8. Plaintiff never told

6

Defendant directly about his concerns with his cellmate or his desire to transfer cells prior to the date of the attack. *Id.* at ¶ 9. Plaintiff also did not speak to any correctional officers or to Internal Affairs about these issues prior to the alleged attack by his cellmate. *Id.* at ¶¶ 10–11.

Individuals in custody may file grievances in accordance with IDOC Departmental Rule 504F, Grievance Procedures for Committed Persons. *Id.* at ¶ 12. Generally, an individual in custody must first attempt to resolve grievances through his counselor within 60 days from the date of the incident or issue. *Id.* If the grieved issue remains unresolved, the prisoner may submit a written grievance on a grievance form to the Grievance Officer designated by the Chief Administrative Officer ("CAO"). *Id.* The Grievance Officer may interview the prisoner and other witnesses as appropriate and obtain relevant documents to determine the merits of the grievance. *Id.* at ¶ 13. Upon completion of the investigation, the Grievance Officer forwards conclusions and recommendations for relief, if any, to the CAO. *Id.* The CAO (or his or her designee) then submits a decision on the grievance to the prisoner. *Id.* If, after receiving the CAO's decision, the prisoner feels the issue is unresolved, he may appeal the decision in writing to the IDOC Director by submitting to the Administrative Review Board ("ARB") both the Grievance Officer's report and the CAO's decision. *Id.* at ¶ 14. The ARB, as the Director's designee, reviews the appeal and submits a written report of its findings and recommendations to the Director or Director's designee, who then makes a final determination on the grievance. *Id.* This is the last step in the grievance process

7

under IDOC rules. *Id.* IDOC maintains grievance documents in the ARB files. *Id.*

A prisoner can also request that a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO (generally, the warden or the warden's designee) rather than to a counselor or Grievance Officer. *Id.* at ¶ 15. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the prisoner, the grievance will be handled on an emergency basis. *Id.* If the CAO determines that the grievance does not present an emergency, IDOC advises the prisoner to resubmit his grievance to the counselor and Grievance Officer for consideration through the normal grievance process. *Id.* At the conclusion of this process, the prisoner may appeal to the ARB. *Id.*

Plaintiff knew about the grievance procedures. *Id.* at ¶ 16. As part of her factual statement, Defendant states that Plaintiff did not exhaust his administrative remedies, *id.* at ¶ 17, but this is a legal conclusion, which does not belong in Defendant's Rule 56.1 statement. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("It is inappropriate to allege legal conclusions in a 56.1(a) statement on the off-chance that one's opponent might not file a correct response.") The Court thus does not deem this statement to have been admitted by Plaintiff despite his failure to respond properly to it.

On February 10, 2019, Plaintiff submitted a grievance to the CAO (marked as an emergency grievance), complaining about the altercation with his cellmate. *Id.* at ¶¶ 19–20. Plaintiff complained in the grievance that he had requested to be moved from his cell because he and his cellmate were not getting along, but IDOC

"ignored or denied" his requests, including the January 4, 2019, email from Fitzgerald. *See* [49-5] at 3–4. The CAO determined that the grievance did not present an emergency and returned it to Plaintiff on February 14, 2019, with a box checked on the grievance indicating that the grievance should be submitted "in the normal manner" because "an emergency is not substantiated." [49] at ¶ 20; [49-5] at 3. Rather than submitting the grievance to his counselor at that time, Plaintiff sent it to the ARB, where it was received on February 22, 2019. [49] at ¶ 20. On March 1, 2019, ARB Chairperson Debbie Knauer returned the grievance to Plaintiff and indicated that it needed to be resubmitted with his counselor's, Grievance Officer's, and CAO's response, as the grievance was in violation of departmental rules. [49] at ¶ 20; [49-5] at 2. The record does not show when Plaintiff received this correspondence.

On April 5, 2019, Plaintiff submitted the February 10, 2019 grievance to his counselor. [49] at ¶ 21; [49-5] at 7. On April 10, 2019, the counselor responded, denying any staff misconduct, and indicating that Plaintiff had been properly placed. [49] at ¶ 21; [49-5] at 7. Plaintiff's Grievance Officer received the grievance on April 18, 2019. [49] at ¶ 21; [49-5] at 6. The Grievance Officer denied the grievance on June 27, 2019, again finding that Plaintiff had been appropriately placed. [49] at ¶ 21; [49-5] at 6. The response does not address the timeliness of the grievance. [49] at ¶ 21; [49-5] at 6. On July 1, 2019, the CAO concurred with the Grievance Officer's report. [49] at ¶ 21; [49-5] at 6.

On July 20, 2019, Plaintiff appealed the CAO's decision to the ARB. [49] at ¶

9

22.  The ARB received the appeal on July 29, 2019.  *Id.*  On Aug. 2, 2019, the ARB, through Chairperson Knauer, determined that the grievance was not timely submitted to Plaintiff's counselor, as required by the state's administrative rules. *Id.*; [49-5] at 5.  Knauer states in a declaration that Plaintiff had 60 days from January 4, 2019, (or until March 5, 2019) to submit a grievance to his counselor about the issue of having not been moved from his cell.  [49] at ¶ 23; [49-4] at ¶ 11. She opines that Plaintiff had sixty days from the date of his altercation with his cellmate, or until March 16, 2019, to submit his grievance to his counselor about that issue.  *Id.*  As noted above, Plaintiff did not submit his grievance to his counselor until April 5, 2019, which she found was in violation of the state's administrative rules.  *Id.*[3]

## II.    APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is not demonstrated by "the mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a fact is material if it might affect the outcome of the suit.  *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).  A genuine issue of material facts exists

---

[3] Because Plaintiff is suing over an alleged failure to protect arising from the January 15, 2019 incident, all relevant deadlines should presumably be calculated from this date, rather than split between January 4 and 15.  But the deadline issue ultimately is not dispositive.

when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Id.*

### III.   DISCUSSION & ANALYSIS

#### A.   Failure to Exhaust Administrative Remedies

Defendant first argues that she is entitled to summary judgment because Plaintiff failed to exhaust the administrative remedies available to him. The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaints to first exhaust his administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see, e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The administrative process, which typically involves the filing of a grievance, is intended to allow correctional facilities "to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). This means that prisoners must "take advantage of all procedures that are actually available." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). Because failure to exhaust is an affirmative defense, Defendant bears the burden of demonstrating that the inmate failed to exhaust. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

12

Here, the grievance procedures in effect at the relevant time required inmates to file their grievances with the counselor within 60 days of the discovery of the problem or incident giving rise to the grievance. Ill. Admin. Code tit. 20, § 504.810(a). Grievances that cannot be resolved through routine channels are then sent to a Grievance Officer. Ill. Admin. Code tit. 20, § 504.820(a). The Grievance Officer then reviews the grievance and provides a written response to the prisoner. Ill. Admin. Code tit. 20, § 504.830(a). The Grievance Officer also reports his or her findings and recommendations to the CAO within two months after receipt of the grievance, when feasible under the circumstances. Ill. Admin. Code tit. 20, § 504.830(e). The CAO then reviews the findings and advises the prisoner of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he can appeal to the IDOC Director through the ARB within 30 days. Ill. Admin. Code tit. 20, § 504.850(a). The prisoner must attach copies of the Grievance Officer's report and the CAO's decision. *Id.* The ARB shall submit to the Director a written report of its findings and recommendations. Ill. Admin. Code tit. 20, § 504.850(d). The Director then reviews those findings and recommendations, makes a final determination as to the grievance within six months, when reasonably feasible, and provides the inmate with a copy of that determination. Ill. Admin. Code tit. 20, § 504.850(e).

The grievance procedures allow for the filing of emergency grievances, which are sent directly to the CAO. Ill. Admin. Code tit. 20, § 504.840. If the CAO determines that the grievance should not be handled on an emergency basis, the

CAO must notify the prisoner in writing that he may resubmit the grievance in accordance with the standard grievance process. Ill. Admin. Code tit. 20, § 504.840(c); *see Williams*, 957 F.3d at 832 (observing that the administrative code was changed in 2017, making it clear that prisoners must resubmit grievances under the normal procedure if the warden declines to review it on an emergency basis).

In this case, Plaintiff eventually did re-submit his grievance through the normal channels, after a detour to the ARB. But Defendant contends that Plaintiff's grievance was untimely by the time he submitted it to his counselor on April 5, 2019. The Defendant, however, fails to cite any Seventh Circuit precedent governing a situation such as this one, where prison officials addressed the grievance on the merits, but the ARB ultimately found it to be untimely. District court rulings point in both directions. *See, e.g., Gara v. Kelley*, No. 10-cv-0769, 2012 WL 3683556, at *4 (S.D. Ill. Aug. 24, 2012) (finding grievance unexhausted where ARB determined it was untimely even though institution had addressed it on the merits because "the Court finds no support for [plaintiff's] contention that the first two levels of review can tie the hands of the ARB such that it can only address a grievance on its merits and not on procedural grounds."); *Escobedo v. Miller*, No. 08-2017, 2009 WL 2605260, at *5 (C.D. Ill. Aug. 25, 2009) (finding grievance exhausted where Grievance Officer and CAO considered grievance on the merits because they implicitly must have found good cause to consider it, even though the ARB later found the grievance untimely). Based on the record here, this Court finds the

14

reasoning of those courts finding exhaustion in such circumstances to be more persuasive.

In *Kane v. Santos*, 17-cv-01054, 2020 WL 967878, at *1 (S.D. Ill. Feb. 28, 2020), the prisoner plaintiff alleged that defendants were deliberately indifferent to his serious medical needs during a procedure to remove an abscess from his arm. The plaintiff filed a grievance over these issues with his counselor on Nov. 18, 2015, within the 60-day period provided for in the state regulations, but when the counselor responded, the plaintiff appealed directly to the ARB instead of the Grievance Officer. *Id.* The ARB noted this mistake and returned the grievance to the plaintiff on January 12, 2016, who then submitted it to the Grievance Officer. *Id.* On February 22, 2016, the Grievance Officer reviewed the grievance on the merits, without considering timeliness, and recommended that it be denied. *Id.* The CAO concurred in the denial. *Id.* When the plaintiff again appealed to the ARB, on April 14, 2016, the ARB found that the grievance had not been timely filed. *Id.* In denying the defendants' motion for summary judgment on exhaustion grounds, the court in *Kane* focused on the fact that the Grievance Officer considered the grievance on the merits and emphasized that the state regulations give the Grievance Officer discretion to consider an untimely filed grievance on the merits if good cause exists. *Id.* at *4 (citing Ill. Admin. Code tit. 20, § 504.810(a), which concerns the initial steps in the grievance process and provides that grievances must be filed within 60 days of the discovery of the problem grieved, but further states that "if an offender can demonstrate that a grievance was not timely filed for

good cause, the grievance shall be considered."). The court observed that while the first appeal to the ARB was a mistake, the Grievance Officer did not reject the grievance on procedural grounds, meaning that the officer must have found good cause to address it. *Id.* In so ruling, the court noted that the Seventh Circuit has held that a procedural shortcoming like a missed deadline only amounts to a failure exhaust if prison administrators explicitly rely on the shortcoming. *Id.* (citing *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)); *see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."). Ultimately, the court in *Kane* found that when a Grievance Officer addresses a grievance on the merits rather than procedural grounds, "the ARB cannot later examine the grievance based on procedural grounds and cure the error." *Id.*

Other courts have ruled similarly. *See*, *e.g.*, *Shakur v. Swalls*, No. 3:20-cv-00042, 2021 WL 3603490, at *3 (S.D. Ill. Aug. 13, 2021) ("A prison official's decision to address the merits of a grievance without considering its procedural defects indicates that the institution had the information necessary to investigate the plaintiff's claims adequately."); *Venson v. Gregson*, No. 3:18-CV-2185, 2021 WL 2948817, at *6 (S.D. Ill. July 14, 2021) (because regulations give facility officials discretion to consider untimely grievances, if they do so they have treated it as properly filed, and defendants may not argue otherwise based on ARB's later

determination of untimeliness); *Ford v. Wexford Health Source*, No. 13-cv-43, 2014 WL 685841, at *5 (S.D. Ill. Feb. 20, 2014) (because Grievance Officer addressed grievances on the merits, defendant could not rely on ARB's later rejection of the grievances as untimely).

Adopting this reasoning, this Court finds that prison officials utilized their discretion to consider Plaintiff's grievance on the merits. Plaintiff timely appealed the CAO's denial of the grievance to the ARB. Therefore, the Court declines to grant summary judgment based upon the ARB's determination of untimeliness or any failure to exhaust.

### B. Deliberate Indifference

Defendant next argues that Plaintiff's claim fails because he cannot demonstrate that Defendant was deliberately indifferent to a substantial risk of serious harm. The Eighth Amendment's proscription against cruel and unusual punishment includes a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Id.* Rather, a prison official is liable for failure to protect an inmate "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

17

A deliberate indifference claim includes two components: (1) the harm to which the prisoner was exposed was objectively serious, meaning that it posed a substantial risk of serious harm; and (2) the defendant prison official was deliberately indifferent to that risk, meaning that she subjectively knew about the risk, and did not take reasonable measures to abate it. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654–55 (7th Cir. 2020); *Farmer*, 511 U.S. at 837.

Defendant does not dispute that the harm to which Plaintiff was exposed was objectively serious; rather, she focuses her argument on the subjective prong. This requires that the defendant "have actual, not merely constructive, knowledge of the risk," meaning that she must be aware of facts from which an inference could be drawn of a substantial risk of serious harm, and she must draw that inference. *LaBrec v. Walker*, 948 F.3d 836, 841(7th Cir. 2020) (citing *Gevas*, 798 F.3d at 480). In determining whether the plaintiff has presented sufficient evidence to raise an inference of actual knowledge, the court must consider the totality of the circumstances. *Id.* at 842–43 (The "overall context is the relevant focus, and that must include consideration of all of the factors as a whole rather than as discrete, independent components.").

In failure to protect cases, "a prisoner normally proves actual knowledge of impeding harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas*, 798 F.3d at 480 (internal citation and quotation omitted). Complaints that "convey only a generalized, vague, or stale concern about one's safety" generally fail; rather, to support an inference that the prison official to

18

whom the prisoner complained had actual knowledge of the risk, a complaint must identify the potential assailant and describe "a specific, credible and imminent risk of serious harm." *Id.* at 480–81. Relatedly, an inmate's letters to a prison administrator may suffice to put the official on notice of a potential constitutional violation, if "the communication, in its content and manner of transmission" gave the official sufficient information to alert her to an excessive risk to inmate safety. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

Defendant argues that Plaintiff lacks any evidence demonstrating she had the requisite mental state for deliberate indifference. She claims this case, like *Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008) (inmate did not put jail officials on notice of serious risk were he stated only that he was "afraid and wanted to be moved"), involves reports of a threat too vague to give notice of a specific threat of serious harm. Defendant acknowledges receiving the Fitzgerald email, but claims it was vague and included a specific cellmate request, which IDOC does not permit. Defendant further contends that, although in hindsight she can say Plaintiff's January 6 and January 8, 2019 letters would have prompted her to contact Internal Affairs for an investigation, no evidence exists to show that she ever received those letters. *See* [50] at 9–10.

The Fitzgerald email, by itself, may not have been sufficient to put Defendant on notice of a substantial risk of serious harm, as the only information it includes about Plaintiff's interactions with his cellmate are that Daniels was "attempting to provoke" Plaintiff and Plaintiff was "feeling stressed out." Defendant may

19

reasonably have believed that the email did not identify a serious threat to Plaintiff. *See, e.g., Hood v. Shaner*, No. 3:17-CV-955, 2020 WL 5910164, at *3 (S.D. Ill. Oct. 6, 2020) (complaint conveying that plaintiff and cellmate "were not getting along" and requesting that one of them be moved, without further context, was "too vague and generalized" to put officer on notice of a specific threat of serious harm).

Viewing the record in the light most favorable to Plaintiff, however, the email, followed in quick succession by Plaintiff's letters did convey such a threat, because those communications, read together, demonstrate escalating tensions between the cellmates; indeed, Defendant acknowledges that the letters alone would have triggered an immediate investigation (a concession that the letters constituted notice of a substantial risk of serious harm). Although Defendant claims no recollection of receiving Plaintiff's January letters, *see* [49-2] at ¶ 4, Plaintiff testified that he sent the letters through an institutional mail process, placing them between the bars for pick up by a gallery officer. *See* [49-1] at 23:6–25:18. As such, at this stage, this Court assumes Defendant received the letters. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 767 (7th Cir. 2021) (although no copies of letters were in the record and defendant denied receiving them, the court "must assume that letters sent through a prison mail system were received by the addressee") (citing *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Placing the note in the prison mail system supports an inference of receipt."); *see also Taylor v. Garcia*, No. 11 C 7386, 2015 WL 5895388, at *4 (N.D. Ill. Oct. 6, 2015) ("Sending letters to a prison official, even without proof of receipt,

20

can create a triable issue of fact as to knowledge depending on their content and manner of transmission."). Defendant argues that, because she did not contact Internal Affairs, she must not have known about the threat conveyed in the letters. [50] at 10. But that assumption lacks support: this is not a situation where the record affirmatively demonstrates non-receipt; nor is it a situation where the record suggests Defendant did not personally review mail addressed to her. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (no issue of fact existed as to IDOC director's knowledge of alleged unconstitutional conditions where uncontroverted affidavit showed that director did not personally review inmate correspondence related to grievances).

Based upon the record, this Court cannot find that Defendant did not receive Plaintiff's letters or otherwise lacked knowledge of the threat Plaintiff claimed. As a result, summary judgment in Defendant's favor remains inappropriate.

## IV. <u>CONCLUSION</u>

For the reasons explained above, the Court finds that Plaintiff exhausted his administrative remedies and that issues of fact remain concerning Defendant's knowledge of the serious risk of harm Plaintiff faced in his cell. Accordingly, the Court denies Defendant's motion for summary judgment [48].

Dated: September 25, 2022                    Entered:

John Robert Blakey
United States District Judge

21